JAMES H. CANNON, ADM'R, v. McDANIEL & JACKSON.

1. APPEAL—JURISDICTION.—When, of several defendants in an action, one only appeals, the case will be considered on appeal only with regard to such matters as affect the rights of appellant.

2. ADMINISTRATION—ESTATES OF DECEDENTS.—Whilst it would be the better practice to present to an administrator, for allowance and approval, the mortgage, as well as the notes, against the estate, which it was executed to secure, yet the presentation and allowance by the administrator of the notes alone will be sufficient to authorize a suit to foreclose the mortgage.

3. ADMINISTRATION — JUDGMENT — ESTATES OF DECEDENTS. — The fact that an affidavit, proving up notes against an estate, for allowance and approval, was made by one not a party to them, nor rep-

resenting himself in the affidavit to be an agent of the party, cannot be made available, except in a direct proceeding to set aside the approval. The allowance and approval, being in the nature of a judgment establishing the notes, cannot be attacked in a collateral proceeding. The same rule applies, after approval, when, in the certificate of authentication for allowance, the word "payments" has been left out.

4. LIEN—PROMISSORY NOTE.—The assignee of a note secured by lien, may enforce the lien, as well as the payee, for the lien is an incident that follows the note.

5. JURISDICTION—COUNTY COURT.—Under the act of March 20, 1848, regulating proceedings in the County Court, the owner of notes, secured by mortgage on the property of an estate, could enforce his lien in the County Court, and in no other court, unless there was some good ground for invoking the jurisdiction of the District Court.

6. DISCUSSED.—Danzey *v.* Swinney, 7 Tex., 626, discussed.

7. SUBROGATION—JURISDICTION—LIEN.—B purchased land from C, from whom he received a deed, and to whom he gave three notes, with D and and E as sureties for the purchase-money, and executed a mortgage to secure the same; afterwards C assigned to X two of the notes only, and, in conjunction with his wife, guaranteed their payment; X held the notes so assigned for the use of Y, and, as his trustee, had the same allowed, after B's death, by his administrator, and approved by the County Court; afterwards, X, for the use of Y, recovered a judgment against D and E, the sureties, and C and his wife, as guarantors, having alleged the insolvency of B's estate. In entering the judgment, the clerk failed to show that it was for the use of Y. X failed to collect the judgment. In a suit afterwards brought by Y to correct the judgment, so as to show his interest, and as subrogated to the rights of C and wife, to recover judgment against B's administrator foreclosing the mortgage : *Held,*

1. That B did not, by his purchase, acquire a legal title to the land, but it remained in C, who, as to the notes assigned by him, held it in trust for the benefit of Y.

2. That as C had not only assigned two of the notes, but had guaranteed their payment, there being no other fund except the proceeds of the sale of the mortgaged land, Y was entitled to priority of payment over the note not assigned.

3. That the case, as stated, presents equities which the County Court had no power to adjudicate.

4. That Y, being subrogated to the rights of C, would not lose his claim upon the land, though the remedy on the notes had been lost.

5. That the judgment in the suit by Y, to correct the judgment procured by X, should have been for the principal and interest

due on the notes, subjecting the land to sale for its satisfaction, with an order directing its execution by the administrator in the administration of the estate.

8. PARTIES.—When different persons hold liens upon the same property, who are known, all should be made parties, if practicable, when the rights of any one of them are sought to be enforced by suit.

9. Where a note is secured by a mortgage, the lien is not lost by bringing suit first on the note without including the lien.

APPEAL from Anderson. Tried below before the Hon. John H. Reagan, special judge.

The facts necessary to a proper understanding of the opinion will be found contained in it.

*T. T. Gammage*, for appellants, contended—

1st. That if the lien existed at all, it could only be enforced in the County Court; and relied on Robertson v. Paul, 16 Tex., 472; Wheeler v. Love, 21 Tex., 584; 20 Tex., 129; Graham v. Vining, 1 Tex., 639; Martin v. Harrison, 2 Tex., 456; Conkrite v. Hart, 10 Tex., 141; Boggess v. Lilly, 18 Tex., 205; Chandler v. Burdett, 20 Tex., 44; Cunningham v. Taylor, 20 Tex., 129.

2. That this case having been once before this court, and the pleas of the jurisdiction of the District Court having been by it, on that occasion, adjudged good, (38 Tex. 491,) the question of jurisdiction is *stare decisis*, citing Chambers v. Hodges, 3 Tex., 517; Wood v. Wheeler, 9 Tex., 128; Cooley's Const. Lim., 47–55; 1 Kent, 475.

3. That the allowance and approval of the notes were nullities; citing Walters v. Prestidge, 30 Tex., 73, 74.

4. That Mrs. Deckerd stood in the relation of an innocent purchaser without notice; citing Baxter v. Dear, 24 Tex., 17; Stone v. Darnell, 20 Tex., 11. He also cited, on other propositions to which the opinion refers, Giddings v. Crosby, 24 Tex., 299; Conkrite v. Hart, 10 Tex., 142; De Cordova v. Smith, 9 Tex., 129; Luter v. Rose, 20 Tex., 648; Rogers v. Green, 35 Tex., 730.

*T. J. Word,* for appellees.—That the parties had a right to be subrogated, I refer to 1 Story's Eq. Juris., secs. 567, 635, 638; 2 Story's Eq., sec. 1226.

It is not pretended the land has ever been paid for. Mrs. Deckard has abandoned it; lives in Cherokee county. Two orders of the Probate Court, one 1866, and one 1869, have been made—the first allowing her $600 in lieu of these 205 acres of land, and directing other lands in Trinity and Cherokee to be sold, to raise the $600; the other, during the pendency of this suit, setting apart these 200 acres of land for a homestead.

The authorities relied on are Crosby *v.* McWillie, 11 Tex., 94–96, AUTHENTICATION; Harrison *v.* Oberthier, 40 Tex., 387, HOMESTEAD; 38 Tex., 487, 490, 491.

ROBERTS, CHIEF JUSTICE.—This is a second suit upon the notes, and a second judgment in the last suit—the first judgment having been reversed and remanded by the Supreme Court.

The first suit was brought in October, 1866, by R. M. Bonner, for the use of McDaniel and Jackson, against W. Y. Lacy and John G. Stuart, as sureties on the notes of John T. Deckard, then deceased, and against I. S. Taylor and wife, assignors and guarantors of said notes, in which a judgment was recovered against them, on the 5th of November, 1866, for $2,497.40, being the principal and interest then due upon said two notes. In this judgment, it was recited that "R. M. Bonner, for the use," &c., recovered the judgment, without mentioning the names of the usees, McDaniel and Jackson, in the judgment.

This suit was brought by the usees, McDaniel and Jackson, to correct the previous judgment, so as to have them to appear to be the beneficiaries in the recovery against the same parties, defendants, and also against James H. Cannon, as administrator of John T. Deckard, setting up a mortgage upon a tract of land, made by Deckard at the time of the

execution of the notes to I. S. Taylor, to secure the payment
of the notes, being the land for which the notes were given,
then sold by Taylor to Deckard.    Pending this suit, Harriet
M. Deckard intervened, on behalf of herself, as widow, and
of her two children, as heirs of John T. Deckard, claiming
the land as a homestead, set apart to them as such by order
of the County Court of Anderson county, in October, 1869,
after the institution of this suit, and previous to her inter-
vention.    The plaintiffs recovered a judgment, in the name
of Bonner, for their use, December 5, 1871, against I. S.
Taylor, "*pro forma*," and against his wife, subrogating them
to all the rights of said Taylor and wife in the said mortgage
and in the said land, and that the same be sold in satisfaction
of the said judgment.    In said judgment it appeared that the
suit was dismissed, as to Lacy, on account of his plea of bank-
ruptcy; as to Stewart, not served with process; and as to I.
S. Taylor, with respect to a judgment for money, on account
of his bankruptcy, the judgment for the amount of money
due was rendered against the wife of Taylor.    From this
judgment no appeal was taken by Taylor or his wife; but
Cannon, administrator, and Mrs. Harriet M. Deckard ap-
pealed, and obtained a reversal of the judgment, on the 8th
of September, 1873, by the Supreme Court.

After the return of the case to the District Court, the plain-
tiffs amended their pleadings, setting up their rights of sub-
rogation under the judgment against Taylor and wife, which
they had not appealed from, and represented the order of
the court, setting apart the land as a homestead to Harriet
M. Deckard and her children, to be a nullity, it being made
after this suit was commenced, and a substituted allowance
for a homestead, having been previously made, which had
not been set aside.

The plaintiffs again, on the 28th of November, 1874, re-
covered a judgment, " that Harriet M. Deckard take noth-
ing by her plea of intervention;" and against Cannon, adm'r,
for $2,497.40, the amount of the first judgment against Lacy

and others, and ten per cent. interest thereon from its date, 5th of November, 1866; that the mortgage be foreclosed, and that execution issue to sell the land. From this judgment Cannon, the administrator, alone has appealed to this court.

All of the other parties, as sureties, assignors, and guarantors, and intervenor, represented separate and distinct interests in reference to the suit of plaintiffs, and their failure to appeal from the judgments, as to them, leaves them out of the case in its present consideration by this court. (Cheatham v. Riddle, 8 Tex., 162.)

Exceptions were taken to this suit by the administrator Cannon, because, although the notes had been allowed by the administrator and approved by the court, the mortgage was never presented to the administrator for allowance or rejection, nor was it alleged to have been, so as to authorize a suit upon it against the administrator in any court. In answer to that, it is contended that the mortgage is but an incident to the notes which it is given to secure, and that a presentation of it for allowance is unnecessary, if the notes are allowed and approved. It would certainly be the better practice to present the mortgage, or a copy of it, with the notes for allowance, so as to apprise the administrator and the court of its existence, especially where there was any considerable delay in proceedings to assert the lien consequent upon it. Chief Justice Hemphill advanced the opinion, though not as a conclusively authoritative decision, that it was sufficient to procure the allowance and approval of the notes secured by the mortgage, without the mortgage itself. He arrived at that conclusion by a construction of the words of the statute: "Any creditor of the estate of a deceased person, holding a claim secured by a mortgage or other lien, which claim has been allowed and approved, or established by suit," may obtain an order of sale, &c. (Paschal's Dig., art. 1319.)

Danzey v. Swinney, 7 Tex., 627. This was followed in the decision of a case subsequently. (Simpson v. Reily, 31 Tex., 301.)

This is certainly the literal interpretation of the statute, and without some more cogent reason than any that now presents itself, it would hardly be proper to depart from it.

An objection was made to the affidavit proving up the notes for allowance and approval, by a person not a party to them, nor representing himself in the affidavit to be an agent of the party. The allowance and approval being in the nature of a judgment, establishing the notes as a valid claim against the estate, precludes the consideration of that question now, otherwise than by a direct proceeding to set aside the approval.

For some reason, the objection is not available to the defect in the certificate of authentication in leaving out the word "payments." In a case where the word "credits" was left out, it was held that the authentication was sufficient; and the claim being rejected, suit should have been brought on it in three months, as required by the statute, (Crosby v. McWillie, 11 Tex., 94.)

But in a suit upon an account, authenticated by an affidavit, which omitted the words "payments and offsets," it was held that a suit could not be maintained on the account so proved up. This was in a direct proceeding, wherein the sufficiency of the affidavit was a material fact in support of the suit upon the account. (Walters v. Prestidge, 30 Tex., 65.)

Both of these questions are settled in this case, by the allowance and approval of the claim. (Moore v. Hillebrant, 14 Tex., 312, and references therein.)

The assignee of a note secured by a lien, may enforce the lien, as well as the payee; because the lien is an incident that follows the note. (Moore v. Raymond, 15 Tex., 554; Murray v. Able, 19 Tex., 213; Id., 500; Pinchain v. Collard, 13 Tex., 335, 336; Duty v. Graham, 12 Tex., 427; Perkins v. Sterne, 23 Tex., 561.)

The administrator, Cannon, by exceptions and by a plea, objected to the jurisdiction of the District Court, as not competent to render a judgment and foreclose the mortgage lien

in this case. The District Court overruled the exception, and held the plea to the jurisdiction insufficient to defeat the plaintiff's action against him, which is assigned as error by appellant. That plaintiff, being the assignee of two notes secured by a mortgage, can proceed to enforce his lien in the County Court, is well established by numerous decisions of this court; and that he must do so, unless there is some good ground for bringing the suit in the District Court, is equally well established, by a continuous line of decisions from the case of Robertson v. Paul, (16 Tex., 472,) down to the present time. (Fortson v. Caldwell, 17 Tex., 628; Cunningham v. Taylor, 20 Tex.. 128; Wheeler v. Love, 21 Tex., 584; Perkins v. Sterne, 23 Tex., 561; Emmons v. Williams, 28 Tex., 778.)

The case of Danzey v. Swinney, (7 Tex., 626,) which is sometimes cited for a contrary doctrine, does not decide the contrary; but in the opinion upon another matter, by way of argument or illustration, it is stated that such a rejected claim of lien may be prosecuted in the District Court to judgment, execution, and sale by the sheriff; whereas the point decided was, that a claim not presented to the administrator for allowance, could not be prosecuted to enforce a lien in the County Court.

The act authorizing suits to enforce liens against estates in the District Court, as found in the District Court act, was passed before the act of 1848, authorizing such a suit to be instituted in the County Court when the claim has been allowed and approved, which is found in the act concerning the estate of deceased persons. (Paschal's Dig., art. 1319, 1479.)

That such is the established rule, and that it has been most rigidly enforced in favor of the jurisdiction of the County Court, is fully shown by reference to the cases that have been just cited, as well as to others that might be referred to.

There are cases, however, in which the jurisdiction of the District Court has been maintained in suits relating to estates of deceased persons, on account of some legal or equitable

right of the party, for the adjudication of which the powers of the County Court were inadequate.

Where a creditor sought to reclaim for an estate a large amount of property, alleged to have been fraudulently conveyed by the intestate before his death, it was decided that the suit was properly brought in the District Court, and the administrator was properly made a party to the suit to receive the property, and have it adjudged to him in the event of a recovery. (Hall v. McCormick, 7 Tex., 278, 279.)

An heir brought and maintained a suit for a distribution of an estate being administered upon, on the grounds of an unnecessary delay in closing the administration, and the fraud and collusion of the administrator and widow of the deceased, by which the estate was being wasted. (Smith v. Smith, 11 Tex., 102.)

In the case of Dobbin, Administrator, v. Bryan, it was decided that the District Court could entertain a suit to rescind a fraudulent sale of property by the administrator, made to the injury of those interested in the estate. (5 Tex., 276.)

In another case, it was held, that the District Court might, upon equitable grounds, reopen an account settled in the County Court; and in delivering the opinion in that case, Justice Lipscomb said, referring to the case of Merle v. Andrews: "It was held, upon the principles of equity jurisprudence, that as petitioner had other grounds of equitable relief presented by the petition, he might well connect therewith the moneyed demand, (not presented to the administrator for allowance,) especially as all evidence of such demand rested upon vouchers and documents in the possession of the defendant; and it would not be possible for the claimant to present his claim in the mode required by the probate law." (Newson v. Chrisman, 9 Tex., 116; Long v. Wortham, 4 Tex., 382; Chevallier v. Wilson, 1 Tex., 164.)

The same principle was applied to a case in the District Court, in which the amount sued for was less than $100, and as to the amount within the jurisdiction of the Justice's Court,

because the debt was secured by a lien which was sought to be enforced, for which the powers of the Justice's Court were inadequate.    (Hargrave v. Simpson, 25 Tex., 396.)

Notwithstanding these cases, the tendency of our decisions has long been to discourage a resort to the District Court, in matters relating to the estates of deceased persons, where the powers of the County Court were sufficient to give the complainant full relief in the assertion of his rights, although it might produce a hardship or inconvenience on the party. (Giddings v. Crosby, 24 Tex., 299; Atchison v. Smith, 25 Tex., 230.)

What are the grounds upon which the plaintiff brought this suit in the District Court, rather than prosecute his lien in the County Court?

The facts, as exhibited in the petition, are, that John T. Deckard purchased two hundred and five acres of land from I. S. Taylor, from whom he received a deed for the same, and at the same time gave to said Taylor three notes, with Lacy and Stuart as sureties, payable at different times, for said land, and executed a mortgage on said land to Taylor, to secure the payment of said notes when they should become due.    Afterwards, Taylor assigned to Bonner two of the notes only, and he and his wife guaranteed the payment of the same.    Bonner held the said notes so assigned and guaranteed to him, for the use of the present plaintiffs, McDaniel and Jackson, in which capacity, he, after the death of Deckard, presented the two notes to Cannon, the administrator, who allowed them "to be paid in the due course of administration," and they were approved by the County Court; and about the same time, (in 1866,) Bonner, for the use of McDaniel and Jackson, brought suit and recovered a judgment against Lacy and Stuart, the sureties, and Taylor and wife, the assignors and guarantors of the said two notes.    In entering this judgment, the clerk failed to show that it was for the use of McDaniel and Jackson.    It may be presumed that the other note given for the land, secured also by the mortgage

as well as the mortgage itself, was held by Taylor, who did not prosecute it as a claim against Deckard's estate. The petition also alleged that said estate of Deckard was insolvent, and that there were no means sufficient to pay said debt, except the land morgaged for their security and payment.

Bonner having failed to collect the judgment that had been rendered, the plaintiffs, McDaniel and Jackson, brought this suit to have the judgment corrected, so as to show their interest, and prayed for a subrogation to the rights of Taylor and wife in the mortgage, and in the land embraced in the mortgage, and against Cannon, for adjudgment and a foreclosure of the mortgage and a sale of the land, for the payment of their said debt against the estate.

Under this state of facts, Deckard did not, by his purchase, acquire a legal title to the land, but it remained in Taylor, who, as to these notes assigned by him, held it in trust for the benefit of plaintiffs. (Howard *v.* Davis, 6 Tex., 174; Dunlap *v.* Wright, 11 Tex., 603; Ballard *v.* Anderson, 18 Tex., 377; Baker *v.* Clepper, 26 Tex., 634; Baker *v.* Rainey, 27 Tex., 59; Robertson *v.* Paul, 16 Tex., 472.)

It was shown that there was another note, equally secured by this mortgage, which Taylor did not transfer to Bonner; and as Taylor had not only assigned, but had also guaranteed the payment of the two notes which were transferred to Bonner, if there were no other fund except the proceeds of the sale of the mortgaged land out of which the two guaranteed notes could be paid, the plaintiffs might well seek to establish a priority for the payment of them over the other note not assigned to Bonner, and thereby, to that extent, have an exclusive interest in the proceeds of the sale of the land; or, if Taylor failed or declined to assert any interest on account of said note, then to be fully subrogated to the entire rights of Taylor in the land, which is the shape of the first judgment in this suit in that regard, from which Taylor and wife have not appealed. These were equities that the County Court had no adequate power to adjudicate. The advantage,

on the part of plaintiffs, is obvious, when we consider that, if they occupy the position of Taylor, the estate cannot acquire a title to the land, or legally dispose of it to their prejudice, without payment of the notes given for it. (Baker *v.* Rainey, 27 Tex., 59; McCreery *v.* Fortson, 35 Tex., 641; Farmer *v.* Simpson, 6 Tex., 310; Shepherd *v.* White, 11 Tex., 354; Tadlock *v.* Eccles, 20 Tex., 790; Monroe *v.* Buchanan, 27 Tex., 241; Robertson *v.* Paul, 16 Tex., 472.)

If the proceeding had been instituted in the County Court, and it had been shown that the notes were the purchase-money of the land, still the land would have been conditionally subject to the homestead right. (Harrison *v.* Oberthier, 40 Tex., 385.)

And if it had not been shown in that court that the notes were given for the land, then other claims, such as funeral expenses and expenses of administration, would have had precedence over this claim. (Robertson *v.* Paul, 16 Tex., 472; Duty *v.* Graham, 12 Tex., 427.)

If plaintiffs be subrogated fully to the rights of Taylor, they would not lose their claim upon the land, though the remedy upon the notes had been lost. (Baker *v.* Rainey, 27 Tex., 59.) It would be otherwise as the mere assignees of the notes, secured by mortgage. (Perkins *v.* Sterne, 23 Tex., 561.) And if the land had been sold by order of the County Court, under this mortgage, for the benefit of plaintiffs, without notice to the party holding the other note, equally secured by the mortgage, the title might have been subject to litigation in the prosecution of the lien attached to the other note.

We have held repeatedly, that where different persons hold liens upon the same property, who are known, all persons having them should be made parties, if practicable, when the right of any one of them is sought to be enforced. (Delespine *v.* Campbell, 45 Tex., 628, and others referred to in that case.)

It would seem, therefore, that there were proper grounds for bringing this suit in the District Court, from the facts that

are stated in the petition. It may be, that it would have been proper for other parties to have been joined in the suit, but it is not perceived that they could have had any such interest as to have rendered it imperatively necessary, as no special objection is made by any one having any interest in making them. (Baker *v.* Rainey, 27 Tex., 59; Monroe *v.* Buchanan, 27 Tex., 241; Buchanan *v.* Monroe, 22 Tex., 541.)

In the trial of the case, questions were raised about the vendor's lien, and the waiver of it, by taking sureties on the notes, and by bringing a suit on the notes first, without including the lien. It is not seen how these questions can be brought into this case. The notes were secured by a mortgage, which was probably given for the security of the sureties; and it has often been held by this court, that a lien is not lost by bringing a suit first upon the notes, without including the lien.

In the defense by the administrator, it is not pretended that the notes have been paid, or that he has any legal or equitable defense against them, other than the alleged irregularities of plaintiffs in their efforts to collect them. It is evident from the record, that the administrator has been actively engaged in the effort to appropriate the land, in which the estate never had any legal title, to other purposes, without one dollar of the purchase-money having been paid, for which the land is bound by express mortgage lien, given to secure the notes when the land was purchased. (Fisher *v.* Foote, 25 Tex. Supp., 311; Hargrave *v.* Simpson, 25 Tex., 397; McAlpine *v.* Burnett, 19 Tex., 500; 17 Tex., 500.)

It is deemed proper to state, that we, after a thorough examination, have had no little difficulty in coming to a satisfactory conclusion upon the points raised in the case, now necessary to be decided; as it has been held up some time, and has to be decided, it has been thought proper to discuss only such questions as relate to the jurisdiction of the District Court; and, in support of what seems to be a meritorious cause of action, we conclude that there are facts enough

stated in the petition to maintain the action against the administrator in the District Court.

The verdict of the jury is in favor of the plaintiffs, against the administrator for the amount of the judgment in 1866, with ten per cent. interest thereon rendered against other parties, instead of for the amount of the principal and interest on the notes, due at the time of the last judgment; and for a vendors' lien upon the land, instead of for a lien by virtue of the mortgage set out in the plaintiffs' pleadings; and in the judgment, it is directed that execution shall issue from the District Court, to sell the land, in satisfaction of the judgment;—all of which is clearly erroneous.

The estate was not liable for more than the principal and interest on the notes. There was no vendors' lien, properly as such, declared upon, but a mortgage given to secure the purchase-money; and though the verdict and judgment had been properly rendered, it should have been ordered to be executed by the administrator, in the administration of the estate. (Bogges *v.* Lilly, 18 Tex., 200; Fortson *v.* Caldwell, 17 Tex., 628.)

. Judgment is reversed, and cause remanded.

REVERSED AND REMANDED.