## P. W. THORN v. MARTHA H. DILL.

56  145
81  320

(Case No. 1411.)

1. EQUITY — EQUITABLE LIEN.— One in possession of land as a home-
stead abandoned it and acquired another. Purchase money notes
were due from him for the abandoned homestead, which on aban-
donment he sold, and by agreement between himself, his vendee
and his vendor, his vendee took up and executed in lieu thereof
other notes to the original vendor, with the agreement that they
should be secured by a lien on the land. In a suit against him by
the original vendor on the substituted notes, *held*,

   (1) That he was estopped from asserting that such written convey-
ance had not been made by him of the abandoned homestead as
would support and raise a vendor's lien, he having resumed posses-
sion of the land, and the maker of the substituted notes being
insolvent.

   (2) He could not repudiate that portion of the contract requiring
the lien while enjoying the benefits of the contract.

   (3) Equity will enforce the intention to secure the notes by lien.

   (4) There were no homestead rights which could prevent the cre-
ation of the lien.

APPEAL from Trinity. Tried below before the Hon.
John R. Kennard.

Mrs. M. H. Dill, the surviving wife of J. H. Dill, de-
ceased, brought this suit in the district court of Trinity
county against Rachael Forsythe, surviving wife of W. E.
Forsythe, deceased, and against the surviving children and
heirs of W. E. Forsythe; also against P. W. Thorn, upon
two promissory notes executed and delivered by W. E.
Forsythe in his life-time to J. H. Dill on the 14th day of
December, 1878. The plaintiff sought to enforce what she
termed a vendor's lien against the pre-emption home-
place of the defendant P. W. Thorn and family, alleging
that, in the life-time of Forsythe, he (Forsythe) purchased
that pre-emption from Thorn; that he took possession of
the same; that Thorn was due Dill, and that he, Forsythe,
had taken up Thorn's notes from Dill, and had given his
(the two sued upon) in lieu thereof.

It was alleged and proved that the estate of W. E. Forsythe (the maker of the notes) was not administered, and there was no necessity for administration, the estate being insolvent, etc. Thorn did not set up the statute of frauds, nor was his wife a party. He alleged that the land on which a vendor's lien was claimed was his homestead; that he had never sold the land to Forsythe; that the notes sued on were made without the authority of himself or wife, and "for the purpose of fraudulently incumbering the homestead of defendant," of which Dill had notice. By her first supplemental petition, Mrs. Dill replied that appellant sold the land to Forsythe, who was to take up the notes due by Mrs. Thorn to Dill, for the same amount as the notes sued on, as part of the purchase money; that by agreement of all the parties the notes sued on were thus made payable and delivered to Dill with agreement for a vendor's lien as security, and appellant's notes delivered to him as fully discharged; that Forsythe and family immediately took possession of the land as their homestead; that appellant and his wife abandoned the premises and acquired a new homestead, but after Forsythe's death fraudulently took possession of the land, with a view to defeat appellee's lien; and an estoppel was pleaded against appellant. Mrs. Forsythe did not answer, but her children, by their guardian ad litem, answered by general denial.

Thorn admitted in his testimony that he sold the land to Forsythe, and that it was part of the contract that Forsythe was to pay Dill his (Thorn's) notes as part payment, and that the notes he was owing Dill were taken up by Forsythe's executing the notes sued on, and that appellant's notes were delivered to him by Forsythe; that he purchased the Hamilton pre-emption and moved on it with his family, and Forsythe and family took possession of the land in controversy; that he knew a year before the trial that the notes sued on were outstanding with vend-

or's lien; and that after this, and about Christmas, 1880, he sold the Hamilton pre-emption, and after Christmas moved back on the land in controversy, he having taken it back from Mrs. Forsythe, who said she could not pay the purchase money; and that he held a regular chain of title to the Hamilton pre-emption, and the party to whom he sold owed a balance on it.

Appellee proved by W. M. Freeman, who wrote the notes sued on, that appellant sold his pre-emption to Forsythe, and as part of the purchase money Forsythe was to execute the notes to Dill instead of appellant; that Dill agreed to accept Forsythe's notes in payment of appellant's notes due Dill for the same amount; that Forsythe, Dill and ap-. pellant were present at the time, and it was agreed by all the parties that the notes were to be secured by a vendor's lien, and that Dill delivered up the notes he held against appellant.

*Cooper & Cooper*, for appellant.

*J. R. Burnett*, for appellee.

STAYTON, ASSOCIATE JUSTICE.— It is apparent that, under the evidence, the appellant has no right under the homestead claim set up by him; for there was not only an intention to abandon the land as a homestead, but there was an actual abandonment, and another homestead was acquired and used by him from some time late in the year 1878 until some time in the spring of 1881.

It may be true that, as the sale of the land by Thorn to Forsythe was by parol, that technically no vendor's lien existed; but it appears from the evidence that it was agreed between Thorn, Dill and Forsythe, that Forsythe should take up the two notes which Thorn had given to Dill, and that instead of the same Forsythe should execute to Dill his notes for a like sum, and that such notes

should be secured by a lien upon the land sold by verbal sale to Forsythe by Thorn.

Under such facts, Thorn could not be heard to say that such a conveyance had not been made by him to Forsythe as would support and raise even a vendor's lien, he having induced Dill to claim that such a state of facts existed.

Having consented and agreed that Forsythe should give the lien, Dill having cancelled the notes of Thorn and taken those of Forsythe in their stead, relying upon Thorn's agreement that a lien should exist upon the land to secure those notes; the estate of Forsythe being insolvent and the land which all the parties intended the lien should be given upon having again gone into the possession of Thorn, and all claim thereto by the heirs of Forsythe having been surrendered, the denial of the existence of the lien by Thorn cannot be heard, so long as he holds on to all of the benefit of the contract which he seeks to repudiate.

Whatever form a contract may take, the real question is, what was the intention of the parties?

Under the facts of this case it is certainly true that Thorn intended, or that he induced Dill and Forsythe to believe that he intended Dill should have a lien upon the land to secure the notes executed by Forsythe to him.

If he so intended, under the facts in proof, effect must be given to that intention.

If he did not so intend, but by his words and acts induced Dill and Forsythe to believe that he so intended, then he will be held to the contract made by Forsythe, in effect under his instructions and for his benefit, as though the contract evidenced by the notes of Forsythe, in so far as the same was intended to create a lien, had been made by himself.

The fact that the notes under the agreement of all the parties were executed to Dill instead of to Thorn would

not have prevented the existence of a vendor's lien to secure the same had the facts been as Dill was authorized to believe they were. Flanagan *v.* Cushman, 48 Tex., 241.

There being no homestead right which could have prevented Thorn from giving a lien upon the land, it must be held that the lien given by Forsythe under the agreement of Thorn that he should do so, is as binding upon Thorn as though made by himself.

The lien given is not technically a vendor's lien, but it must have the same effect. The judgment is affirmed.

                                          AFFIRMED.

[Opinion delivered January 24, 1882.